[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
In the trial of the above captioned case, the parties have testified and corroborated the following basic facts.
The plaintiff, Frank A. Acello, Jr., and the defendant, Mariko Egawa, met as neighbors in Flushing, Queens in the mid-1980's following their respective divorces. The plaintiff worked nearby and would sometime babysit for the defendant's two children. The relationship between the plaintiff and the defendant continued to improve, with both parties placing trust in each other concerning many day to day activities. In the spring of 1988, the defendant looked for a house to rent in Greenwich. Although the defendant was looking at rentals for $1,500 per month, the only house close to a train station so the defendant could commute to work in New York was one for $2,000 per month on Butler Street near the Cos Cob station. The plaintiff offered to pay $500 per month and told her that he could give up his $500 per month apartment in Flushing, which was going up in rent and move in with her. The defendant paid the security deposit and realtor's fee and each month she paid the $2,000 rent and utilities. The plaintiff paid her $500 a month.
During that year, the defendant applied for a credit card from Citicorp Visa in addition to her personal credit and work credit card. The plaintiff was named as a secondary card holder. This way a credit card would be available to him for emergencies. As the plaintiff had a very negative credit rating, he could not qualify for one on his own. Towards the end of the rental year, the defendant looked with the plaintiff for a house to rent or buy. A house at 14 Tremont Street in Cos Cob was well located since it was close to the Cos Cob grammar school where the defendant's children had been attending school during the past year and was still within reasonable walking distance to the train station so the defendant could commute by train to work in New York.
Title was to be in defendant's name, as plaintiff could not qualify for a mortgage because of plaintiff's past credit CT Page 2988 problems due to his previous divorce. Both plaintiff and defendant and her two children would reside together in said residence. The purchase price of said residence was $245,000.00. Defendant was able to obtain a mortgage in the amount of $200,000. Plaintiff would provide the sum of $16,000.00 to defendant for the express purpose of having said monies applied towards the downpayment of said residence. The rest of the downpayment and closing costs were paid by the defendant.
The plaintiff borrowed $12,000 from his retirement plan at work and took another approximately $2,000 from an IRA. Both amounts were deposited into the defendant's bank account as the plaintiff did not have a bank account. He deposited another $2,000 to her account for a total of $16,000.
The house at 14 Tremont Avenue was in poor condition and had not been occupied for several years. The plaintiff and the defendant were in agreement that the electrical, plumbing, and walls of the residence were in need of repair. It was contemplated and agreed to by the parties that the plaintiff would do demolition work on the structure. It was also contemplated that the structure would be renovated through the help of electrical, building and plumbing contractors. The plaintiff and defendant had a target date of completion of said work within two (2) years of purchase. After said work was to be completed, the parties would place said residence on the market and anticipated that they would make a profit on the sale of said residence. At the time of sale, the plaintiff was to receive a portion of the profits of sale as well as the return of the $16,000.00. The plaintiff was also to be reimbursed for any expenses and costs incurred in his work on the residence. The closing on the house at 14 Tremont Street in Cos Cob occurred in late July, 1989.
The plan to fix up the house in two years and sell it broke down completely. During 1991 and 1992, the relationship between the plaintiff and the defendant deteriorated to such an extent that, on September 1, 1992, the plaintiff moved out of the Tremont Street residence. At the time it was alleged the defendant stated to the plaintiff that the plaintiff would be reimbursed and repaid for his work as well as the $16,000.00.
The issue for the court to decide is whether the plaintiff is entitled to the monies claimed in his complaint with the evidence submitted and has he proven his case by a fair preponderance of CT Page 2989 the evidence? Whether the defendant has proven her claims as stated in her counterclaim by a fair preponderance of the evidence?
The court finds that the plaintiff has clearly met his burden of proof concerning the claim of $16,000.00. The plaintiff testified that he provided the defendant with the aforesaid monies towards a downpayment on the Tremont Street residence. The defendant, in her sworn testimony, has admitted that the $16,000.00 was given to her by the plaintiff and that she agreed to repay said monies to the plaintiff. Clearly, the plaintiff has met his burden of proof concerning this matter in that the defendant has admitted the receipt of said monies. Unless the defendant can prevail on her defenses or counterclaim, the plaintiff should be entitled to the return of the downpayment.
The plaintiff has testified that he performed work for the benefit of the defendant in that the defendant had sole title of the residence. The plaintiff testified that he performed demolition and other work in said residence. In addition, plaintiff testified that he performed said work over a period of several years. He testified that he believed that the value of his labor to the defendant was $10,000.00. The defendant also testified that he purchased supplies and materials for the residence in the approximate amount of $5,000. He could only produce several invoices for rent.
As to these two claims the plaintiff simply did not prove his claims. From the testimony at the hearing the court cannot find that the demolition work or other works on the residence resulted in any increase value to the defendant. Also, since there was no compliance with the building permits requirement and/or the Home Improvement Act, the plaintiff cannot prevail on those issues. Nor can he recover for any other monies forwarded as a contribution towards mortgage requests on the house. As stated, the plaintiff simply failed in his burden of proof on these issues.
The defendant in her counterclaim is seeking $35,000 in general damages less the $16,000 that plaintiff gave for part of the downpayment on the house. The defendant also claims that the plaintiff's claim is barred by Connecticut Statutes of Limitation. While the statutes may be controlling for the claim of labor and material, the issue need not be decided since the plaintiff has failed in its burden on these issues. However, as CT Page 2990 to the claim for the return of the $16,000 downpayment the court finds that the defendant admitted that debt when the plaintiff moved out and therefore the court cannot find the statute to be a bar to a recovery on that issue.
As to the remaining issue on the question of rent, the $4,000 Visa card, the security deposit and repairs by the defendant, the court finds against the defendant on these issues. There was no persuasive testimony or credible documentation concerning any of these claims. Simply put, both the plaintiff and the defendant failed in their respective burden of proofs, except for the plaintiff's $16,000. Since the court cannot find that that sum was wrongfully withheld, no interest is awarded.
Judgment may enter for the plaintiff to recover of the defendant $16,000 without prejudgment interest.
RYAN, J.